IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CAROLINE M. HICKS,

          Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

          Defendant.

Civil Action No. 22-514-GBW

## MEMORANDUM ORDER

Plaintiff Caroline Hicks appeals from a decision of Defendant Kilolo Kijakazi, the Acting Commissioner of Social Security, denying Ms. Hicks' application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") and supplemental security income ("SSI") benefits under Title XVI of the SSA.[1] *See* 42 U.S.C. §§ 401-33 & 1381-1383f. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Presently pending before the Court are cross-motions for Summary Judgment filed by Ms. Hicks and the Commissioner (the "motions"). D.I. 15; D.I. 18. Ms. Hicks asks the Court to reverse the Commissioner's decision with an instruction that benefits be awarded or that the case be remanded for further proceedings. D.I. 16 at 20. The Commissioner opposes that request and asks the Court to affirm her decision. D.I. 19 at 14. For the reasons set forth below, the Court GRANTS Plaintiff's motion, DENIES Defendant's motion, and REMANDS for further consideration.

---

[1] This case and these motions were filed while Kilolo Kijakazi was the Acting Commissioner. Martin O'Malley has since been confirmed as the Commissioner. The Court will refer to Dr. Kijakazi as the Commissioner for purposes of this opinion.

I.     BACKGROUND

A. Procedural Background

Ms. Hicks filed for DIB and SSI on October 31, 2018 and October 17, 2019 alleging disability beginning on February 12, 2018. The Delaware Disability Determination Service denied Ms. Hicks' claim for benefits, both initially and upon reconsideration. Tr. 108-11, 120-26. At Ms. Hicks' request, an administrative law judge (ALJ) conducted a hearing on December 14, 2020, at which Ms. Hicks and a vocational expert (VE) testified. Tr. 35-58. On February 1, 2021, the ALJ found that Ms. Hicks was not disabled because she could perform the requirements of unskilled, sedentary occupations such as addresser, table worker, and sorter. Tr. 12-34. On February 17, 2022, the Appeals Council denied Ms. Hicks' request for review. Tr. 1-5. Thus, the ALJ's February 1, 2021 decision became the final decision of the Commissioner. On April 22, 2022, Ms. Hicks filed a complaint in this Court seeking judicial review of the ALJ's decision. D.I. 2. On February 17, 2023, Ms. Hicks filed her motion for summary judgment. D.I. 15. The Commissioner opposed her motion and filed a cross-motion for summary judgment on March 2, 2023.

B. Factual Background

a. Physical Condition

Ms. Hicks was born on January 21, 1985, making her a younger individual. Tr. 61. Ms. Hicks has a GED and worked part-time during the relevant period as a customer service clerk. Tr. 292. Ms. Hicks alleges that she suffers from various physical conditions, including: osteoarthrosis of the right ankle, chronic ankle pain, chronic back pain, carpal tunnel syndrome, tendonitis, osteoarthrosis and chondromalacia of the right knee, diabetes, hypertension, sleep apnea, and lumbar disc disease.

Since 2017, Ms. Hicks has been treated for right ankle pain, and was diagnosed for right ankle synovitis and tenosynovitis. Tr. 367-68. On February 13, 2018, Dr. Jason Kline performed right ankle surgery to treat severe chronic osteoarthritis of the right subtalar joint and chronic ligament tear. Tr. 398, 400-01. After the surgery, Ms. Hicks completed twenty (20) sessions of physical therapy, but still had pain and weakness in her ankle. Tr. 878-941. After the ankle surgery, Ms. Hicks developed back pain. Tr. 723. Ms. Hicks reported that she was independent in basic activities of daily living, walked without an assistive device, and had normal strength. Tr. 724-25. Nearly a year after the ankle surgery, Ms. Hicks saw William Barrish, M.D., who observed that Ms. Hicks had negative straight leg raising testing, no erythema or effusion in her wrists or hands, and a right antalgic gait with the use of a cane. Tr. 870.

On March 13, 2019, Ms. Hicks visited a primary care provider complaining about right knee stiffness and instability. Tr. 1129. Testing found an osteochondral defect involving the right femoral condyle, mild degenerative changes in the medial compartment, small quadriceps enthesophyte, and chondromalacia of the right patella. Ms. Hicks had physical therapy. Tr. 942-48. Ms. Hicks saw an orthopedic specialist again, who found positive crepitation. Tr. 1648. Ms. Hicks returned to the primary care provider on September 24, 2019, complaining that her knee gave out. Tr. 1664. An X-ray showed medial compartment narrowing, osteophyte formation, and an osteochondral defect in the medial femoral condyle. Tr. 1310. A later MRI revealed small loose bodies. Tr. 1694. On January 20, 2020, Ms. Hicks reported to Dr. William Doran that she had worsening right knee pain. Dr. Doran recommended weight loss and discussed surgery. Tr. 1721-22. Dr. Jeremie Axe diagnosed Ms. Hicks with osteoarthritis of the right knee and osteochondral defect of the femoral condyle. Tr. 2094-95.

In 2017, Ms. Hicks began treatment for lower back pain. Tr. 723-39. She was diagnosed with lumbar spondylosis and was noted to have hypertrophic arthropathy of the facet joints. Tr. 734-35. Ms. Hicks underwent a right L4-5 facet joint cyst aspiration and epidural steroid injection. Tr. 732. Ms. Hicks had physical therapy for low back pain and right knee pain but continued to have pain. Tr. 1012-13. On July 21, 2020, Ms. Hicks consulted with Dr. William Newell for lower back pain, advising of a motor vehicle accident. Tr. 2102-04. An MRI of the lumbar spine on June 9, 2020, showed disc bulge, disc herniation, and neural encroachment. Tr. 2108, 2191-92. Dr. Newell diagnosed Ms. Hicks with lumbar sprain and strain and lumbar radiculopathy and recommended physical therapy.

Ms. Hicks also has diabetes. Tr. 799-867. She struggles managing her diabetes and had to see her endocrinologist three (3) times in October 2019 due to fluctuating glucose levels. Tr. 1575, 1596, 1616-18. On July 8, 2020, Ms. Hicks was admitted for major depressive disorder. Tr. 1708-15. She was hospitalized for six (6) days and sought mental health treatment after release. *Id.*; Tr. 1913-52. On March 6, 2020, Ms. Hicks reported having sleep apnea. Tr. 2496-98. On July 22, 2020, Ms. Hicks underwent a sleep study which confirmed a diagnosis of severe sleep apnea. *Id.*

Dr. Kline has conducted multiple assessments about Ms. Hicks' ability to work from 2018-2020. An April 11, 2018 health assessment stated that Ms. Hicks was unable to work due to chronic osteoarthritis of her right foot. Tr. 2248-49. Dr. Kline found that Ms. Hicks was limited in her ability to complete activities of daily living, sit or stand for up to five (5) hours, and climb a flight of stairs or walk 100 yards without pause. Tr. 2248-49. On November 20, 2018, Dr. Kline released Ms. Hicks to four (4) hour shifts. Tr. 2257. Dr. Kline completed another health assessment on January 21, 2020, finding that Ms. Hicks was unable to work for

4

six (6) to nine (9) months due to osteoarthritis of the right foot post-surgery. Tr. 1697-98. On November 19, 2020, Dr. Kline identified that Ms. Hicks would be limited to standing fifteen (15) minutes at a time and would need to elevate her legs above the hip twenty percent (20%) of the day. Tr. 1953-55. Dr. Kline found that Ms. Hicks would be unable to walk a block at a reasonable pace on rough surface, walk enough to shop or bank, or climb a few steps at a reasonable pace. *Id.* In an eight (8) hour workday, Dr. Kline determined that Ms. Hicks would be limited to sitting four (4) hours and standing and walking less than two (2) hours. *Id.* According to Dr. Kline, Ms. Hicks would need unscheduled breaks two (2) to three (3) times a day, lasting about twenty (20) minutes each. *Id.*

Dr. William Doran completed a medical statement on December 1, 2020. Tr. 2089-92. Dr. Doran opined that Ms. Hicks would be limited to two (2) to four (4) hours standing, eight (8) hours of sitting and lifting up to twenty (20) pounds. *Id.* Dr. Doran also opined that Ms. Hicks' impairments would likely produce bad days daily. *Id.*

Dr. William Barrish examined Ms. Hicks on February 7, 2019. Tr. 870. Dr. Barrish opined that Ms. Hicks could drive, sit eight (8) hours a day, stand or walk for two (2) to four (4) hours a day, lift ten (10) pounds frequently and twenty (20) pounds occasionally, grasp and handle, and bend. *Id.*

Dr. Michael Borek, a state agency consultant, evaluated Ms. Hicks' medical records and placed physical limitations limiting Ms. Hicks to sedentary work with some physical limitations. Tr. 70-73. Dr. Borek determined that Ms. Hicks had severe impairments of degenerative disc disease of lumbar spine, right ankle osteoarthritis, carpal tunnel syndrome, and morbid obesity. Tr. 68, 73. Dr. Kataria evaluated Ms. Hicks' claim in January 2020, affirming the severity of her impairments and limiting her to light work with physical limitations. Tr. 78-105.

5

### b. The Administrative Hearing and Findings

At her hearing, Ms. Hicks testified about her history of weight problems, her numerous medical appointments, and her high-risk pregnancy. Tr. 41-43. She testified that she attempted to work part-time but was unsuccessful. Tr. 45. Ms. Hicks testified that her right ankle pain required her to elevate her legs and use ice and heat packs for many hours. *Id.* She testified that walking and standing aggravated the pain. Tr. 46. She testified that her right knee osteoarthritis also required leg elevation, with injections helping but not solving the issue. *Id.* Ms. Hicks detailed her history of back problems, complaining of sharp and stabbing pain. Tr. 47. She further discussed her depression, diabetes, and sleep apnea. Tr. 47-49. Ms. Hicks testified that she could only stand for about ten minutes, had balance problems, needed to walk after sitting for 30 minutes, and was limited to lifting a gallon of milk. Tr. 50-51. Ms. Hicks testified that she could cook, wash dishes, and vacuum with sufficient breaks. *Id.* She mentioned needing help with dressing. Tr. 42.

Vocational expert ("VE") Vanessa Ennis testified at the hearing. Tr. 54-58. The VE stated that Ms. Hicks worked as a customer service clerk, a light exertional position. The ALJ asked about restricting Ms. Hicks to sedentary work with some exceptions. Tr. 55. The VE stated that Ms. Hicks could perform work as an addresser, sorter, and table worker. Tr. 55-56. The VE noted that, if an individual was "off task" fifteen percent (15%) or more of the workday, there would be no competitive employment available. Tr. 56. The VE advised that elevation of legs twenty percent (20%) of the workday, missing four (4) days per month from work, and the need for forty (40) to sixty (60) minutes of additional work breaks would each independently not allow for competitive employment. Tr. 57-58.

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2023.

2. The claimant has not engaged in substantial gainful activity since February 12, 2018, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: osteoarthritis of the right foot, degenerative joint disease of the right knee, obesity, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; and, can have no more than occasional exposure to extreme cold, vibration, and hazards such as moving machinery and unprotected heights. The claimant can perform unskilled work, consistent with reasoning level one (1) or two (2), and involving occasional changes in routine work settings and work processes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 21, 1985, and was 33 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

      10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

      11. The claimant has not been under a disability, as defined in the Social Security Act, from February 12, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 17-27.

## II.   STANDARD OF REVIEW

Both parties filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining the appropriateness of summary judgment, the Court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-moving party' but not weighing the evidence or making credibility determinations." *Hill v. City of Scranton*, 411 F.3d 118, 124-25 (3d Cir. 2005) (alteration in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

The Court must uphold the Commissioner's factual findings if they are supported by "substantial evidence." *See* 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks and citation omitted). In analyzing whether substantial evidence supports the Commissioner's factual findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986). Even if the reviewing court would have decided the factual inquiry differently, it must defer to the ALJ and affirm the Commissioner's decision, so long

8

as the decision is supported by substantial evidence. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Monsour*, 806 F.2d at 1190-91.

In addition to conducting an inquiry into whether substantial evidence supports the ALJ's determination, the Court must also review the ALJ's decision to determine whether the correct legal standards were applied. *Bierley v. Barnhart*, 188 F. App'x 117, 119 (3d Cir. 2006). The Court's review of legal issues is plenary. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).

Title II of the SSA "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Title XVI of the SSA provides for the payment of disability benefits to indigent persons under the SSI program. *Tate v. Berryhill*, C.A. No. 15-604-LPS, 2017 WL 1164525, at *5 (D. Del. Mar. 28, 2017). To qualify for DIB benefits, the claimant must establish that she was disabled prior to the date she was last insured. 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990). A "disability" is defined for purposes of DIB and SSI as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A) & 423(d)(1)(A); *see also Tate*, 2017 WL 1164525, at *5. A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 1382c(a)(3)(B) & 423(d)(2)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003); *Tate*, 2017 WL 1164525, at *5.

In determining whether a person is disabled, the Commissioner is required to perform a five (5) step sequential analysis. *See* 20 C.F.R §§ 404.1520 & 416.920; *see also Russo v. Astrue*, 421 F. App'x. 184, 188 (3d Cir. 2011). If a finding of disability or non-disability can be made at any point

9

in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4). At Step One, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (mandating a finding of non-disability when claimant is engaged in substantial gainful activity); 20 C.F.R. § 416.920(a)(4)(i) (same). If the claimant is not engaged in substantial gainful activity, Step Two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii) (mandating a finding of non-disability when claimant's impairments are not severe); 20 C.F.R. § 416.920(a)(4)(ii) (same). If the claimant's impairments are severe, then the Commissioner proceeds to Step Three and must compare the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work. 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii); *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). When a claimant's impairment meets or equals an impairment in the listings, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii). If a claimant's impairment fails to meet or medically equal any listing, the Commissioner should proceed to Steps Four and Five. 20 C.F.R. §§ 404.1520(e) & 416.920(e).

At Step Four, the Commissioner determines whether the claimant retains the residual functional capacity (or "RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv) (stating that a claimant is not disabled if he or she is able to return to past relevant work); 20 C.F.R. § 416.920(a)(4)(iv) (same); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008) (internal quotation marks and citation omitted). "The claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to his or her past relevant work, Step Five requires the Commissioner to determine whether the claimant's impairments preclude him or her from adjusting to any other available work. 20 C.F.R. § 404.1520(a)(4)(v) & (g) (mandating a finding of non-disability when the claimant can adjust to other work and a finding of disability when the claimant cannot do so); 20 C.F.R. § 416.920(a)(4)(v) & (g) (same); *Plummer*, 186 F.3d at 428. At this last step, the burden of production is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *Plummer*, 186 F.3d at 428. In other words, the ALJ must show that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his or] her medical impairments, age, education, past work experience, and [RFC]." *Id.* When making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *Id.* At this step, the ALJ often seeks the assistance of a VE (as the ALJ did here). *Id.*

### III. DISCUSSION

Ms. Hicks makes two (2) arguments on appeal: (1) the ALJ erred in his severity findings at Step Two with regard to Ms. Hicks' lumbar disease and related lower back pain, improperly failing to consider the complete record and disregarding substantial contradicting evidence (D.I. 16 at 14-16); (2) the ALJ erred at Steps Four and Five in making his RFC determination, in that the ALJ failed to include all of Ms. Hicks' credibly established limitations, including: (a) overall inability to sustain work; (b) her need to elevate her legs due to chronic edema; and (c) the impact of her non-severe impairments in coordination with severe impairments (*id.* at 16-20). The Court will address these arguments in turn.

### A. The ALJ Erred by Failing to Consider Ms. Hicks' Lumbar Back Conditions.

Ms. Hicks' first argument has to do with the ALJ's analysis at Step Two. Here, Ms. Hicks asserts that the ALJ erred at this step by not properly analyzing her lumbar disc disease. For the reasons that follow, the Court agrees.

As was noted above, at Step Two of the five (5) step sequential analysis, an ALJ considers whether a claimant's impairments are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). An ALJ may deem an impairment "not severe" only if it involves a "'slight abnormality'" that has "'no more than a minimal effect'" on the individual's ability to work. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting Social Security Ruling 85-28, 1985 WL 56856, at *3). Conversely, an impairment is severe where it significantly limits the claimant's physical or mental ability to do "basic work activities," including, for example, physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling[.]" 20 C.F.R. §§ 404.1522(b) & 416.922(b). The United States Court of Appeals for the Third Circuit has described the severity determination at Step Two as "not an exacting one" for a claimant to meet, and as a "de minimis" inquiry. *McCrea*, 370 F.3d at 360 (internal quotation marks, emphasis and citations omitted). As a result, "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant[,]" and a "Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." *Id.*

In his decision, the ALJ found that Ms. Hicks' degenerative disc disease of the thoracic spine was a non-severe impairment. However, the ALJ made no reference to Ms. Hicks' lumbar disc disease nor did he give any severity findings. Tr. 18. Defendant argues that the ALJ did consider Ms. Hicks' thoracic disc disease and lumbar disc disease as a single impairment but cites no evidence in the ALJ's decision to support this theory. *See* D.I. 19 at 9-12. Given the

circumstances of this case, the Court finds that the ALJ was minimally required to state that he was considering the two (2) impairments together.

Defendant next argues that once an ALJ finds that a claimant has even one (1) severe impairment (as here) the ALJ proceeds and considers the combined impact of all impairments. *Id.* (citing 20 C.F.R. § 404.1520(d)-(g), 404.1523, 404.1545(a)(2), 416.920(d)-(g), 416.923 and 416.945(a)(2)). Thus, Defendant argues, any possible error was harmless. The Court, however, is not persuaded by this argument. The only evidence that Defendant identifies in support of her theory that the ALJ properly considered the impact of the lumbar disc disease is citations to one (1) pain management note in 2018, and a consultative examination done in February 2019. *Id.* at 11. However, there is other significant medical evidence that was ignored—for example, the state agency consultants identified Ms. Hicks' spinal disorder as a severe impairment, and there were numerous records from therapists, chiropractors, orthopedic specialists, and imagers that went unaddressed. Tr. 1012-60, 2102-04, 2108, 2115-2227. Even in analyzing the cited evidence, there are multiple objective findings supporting the additional disabling effects of the lumbar disc disease. For instance, Joan Hayes (a nurse practitioner) found bilateral facet joint tenderness with positive loading test, limited range of motion of the lumbar spine, and positive SIJ-Faber's test. Tr. 725. Ms. Hayes diagnosed Ms. Hicks with lumbar radiculopathy and spondylosis, modified her pain medication, and administered a lumbar injection. Tr. 725-26. The ALJ's failure to "explain his implicit rejection of this evidence or even to acknowledge its presence was error." *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981).

Defendant also cites evidence of Ms. Hicks' activities (e.g. pregnancy, driving, washing laundry) to argue that any error is harmless. D.I. 19 at 12. Given that those actions were regularly taken with breaks and/or with elevation of legs that the VE has acknowledged would prevent employment, the Court is unable to find that they are sufficient to show that any error

13

was harmless. Tr. 50-51. In any event, the ALJ's lack of analysis of Ms. Hicks' lumbar disc disease, both at the severity step and in considering its effects on the other steps, warrants a remand.

### B. The ALJ Erred by Not Considering Ms. Hicks' Credibly Established Limitations.

Ms. Hicks' next set of arguments relates to the ALJ's RFC determination. Ms. Hicks argues that the ALJ failed to consider (1) her overall inability to sustain work; (2) her need to elevate her legs due to chronic edema; and (3) the impact of her non-severe impairments in coordination with severe impairments. If the ALJ accepts evidence establishing the existence of a medical impairment and its associated limitations, then the ALJ is required to include appropriate limitations in her RFC finding. *See* 20 C.F.R. § 404.1545(e) and *Social Security Ruling 96-8p*, 1996 WL 374184, at *7 (S.S.A. 1996) (stating that an RFC finding must include all the limiting effects of a claimant's impairments). Under SSR 96-8p, an "RFC assessment must always consider and address medical source opinions [and i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

The Third Circuit has also repeatedly held that an RFC finding must include all of a claimant's established limitations. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); see also *Social Security Ruling 85-15*, 1985 WL 56857, at *6 (S.S.A. 1985) (requiring all impairment-related work limitations to be reflected in the RFC finding); *Social Security Ruling 83-10*, 1983 WL 31251, at *2 (S.S.A. 1985) (defining RFC as a work-setting medical assessment encompassing all of the individual's functional limitations from his or her impairments).

Dr. Kline and Dr. Doran both issued medical statements stating that Ms. Hicks would either miss significant time from work or have bad days daily. Tr. 1953-55, 2089-92. Also, an ALJ must consider the frequency of a claimant's treatment, including hospitalizations and

medical appointments, when deciding the claimant's capacity for work on a "regular and continuing basis." *Kangas v. Bowen*, 823 F.2d 775, 777-78 (3d Cir. 1987). The record is replete with Ms. Hicks requiring treatment for her multiple conditions, including office visits with many specialists, laboratory testing, procedures, surgeries, hospitalizations, and diagnostic studies. *See* Part I.B.a, *supra*.

The ALJ was required to consider the combined effects of Ms. Hicks' impairments and treatment on her ability to work each day, and the record contains sufficient evidence to find that the combination of Ms. Hicks' impairments would impact her ability to regularly attend work. *See* 20 C.F.R. §§ 404.1522 (requiring consideration of the combined effects of all concurrent impairments); *Todd v. Berryhill*, 2019 WL 1995494 (D. Del. May 6, 2019) (remanding for failure to consider the inability to sustain work). The only mention in the ALJ's decision about the ability to sustain work is the ALJ deciding that he was not persuaded by Dr. Kline's opinion that Ms. Hicks would need to be absent more than four (4) days per month, because "there is no basis in the medical evidence for limitations on . . . absences. The objective findings show no more than mild to moderate findings, and improvement in her pain symptoms following surgery on her ankle and injections in her knee." Tr. 23. However, this oblique reference is not enough—the ALJ "must consider all the evidence and give some reason for discounting the evidence she rejects." *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). The ALJ was required to analyze not only Dr. Kline's statement that Ms. Hicks would need absences, but also the medical records evidencing Ms. Hicks' frequent medical appointments, and Dr. Doran's statement that Ms. Hicks would have bad days daily. Tr. 2089-92. Accordingly, remand is appropriate for further assessment of Ms. Hicks' ability to sustain work on a regular basis. On remand, the ALJ should consider whether the combination of Ms. Hicks' severe and non-severe impairments would limit her ability to regularly attend work. *See SSR 96-8p*, 1996 WL 374184, at *5.

Moreover, the ALJ's decision to entirely discount Ms. Hicks' need to elevate her legs was not justified. Dr. Kline found that Ms. Hicks had right ankle edema and pain during her one (1) year follow up and opined that Ms. Hicks would need to elevate her legs. Tr. 2258-59. Ms. Hicks repeatedly testified to this fact. Tr. 45-46. Other medical records noted edema in Ms. Hicks' legs. Tr. 946, 958, 98, 870. The only thing the ALJ noted on the record related to the need for Ms. Hicks to elevate her legs was that Dr. Doran did not note that Ms. Hicks was required to do so. Tr. 23. However, standing alone, this absence of evidence in a single report is not sufficient evidence of absence. On remand, the ALJ should minimally give a reason for discounting the evidence in the record regarding Ms. Hicks' need to elevate her legs. *See Adorno*, 40 F.3d at 48. A remand is also necessary in this action because the VE testified that the need to elevate at hip level during the workday would not allow Ms. Hicks to pursue competitive employment. Tr. 57. This testimony would support a finding of disability at Steps Four and Five, making error not harmless.

Lastly, Ms. Hicks requests the Court to remand with "instructions to award benefits." D.I. 18 at 20. The Court declines. A court may reverse an ALJ's decision and grant disability benefits when the record has been fully developed, all essential factual issues have been resolved, and the record adequately establishes a claimant's entitlement to benefits. *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). Here, the record is substantial, but there remain some essential factual issues to be resolved by the ALJ, and it is not clear that an award of benefits is required. If the ALJ assesses the evidence and the limitations referenced herein, he may be able to sufficiently explain why no finding of disability is appropriate or decide to grant benefits. *See, e.g., Morris v. Astrue*, Civ. Action No. 10-414-LPS-CJB, 2012 WL 769479, at *25 (D. Del. Mar. 9, 2012). The outcome remains to be seen.

WHEREFORE, at Wilmington this 19th day of March, 2024, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (D.I. 15) is GRANTED, Defendant's

16

Motion for Summary Judgment (D.I. 18) is DENIED, and the case is REMANDED for further proceedings as set out herein.

                                                                                                _____
                                                                                                GREGORY B. WILLIAMS
                                                                        UNITED STATES DISTRICT JUDGE